IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:17-CV-30-D

| | |
|---|---|
| UNIVERSAL UNDERWRITERS INSURANCE COMPANY, ) ) ) Plaintiff, ) ) v. ) ) MICHAEL G. LALLIER, RLC, et al., ) ) Defendants. ) | **ORDER** |

On February 16, 2017, Universal Underwriters Insurance Co. ("Universal" or "plaintiff") filed a complaint against Michael G. Lallier ("Lallier"), RLC, LLC, d/b/a Reed Lallier Chevrolet ("Reed Lallier Chevrolet"), GRJ, Inc., MGL Inc., Gene Reed, Jr. ("Reed"), and John Quinn ("Quinn") seeking a declaratory judgment [D.E. 1]. Universal seeks a declaration concerning its duties to defend and indemnify defendants Lallier, Reed, and Reed Lallier Chevrolet in a lawsuit that Quinn filed (the "Quinn Action"). See id.; [D.E. 1-2]. On June 16, 2017, defendants Lallier, Reed Lallier Chevrolet, MJL, Inc., GRJ, Inc., and Gene Reed, Jr. answered and counterclaimed for (1) a declaratory judgment concerning Universal's duty to defend and indemnify, (2) breach of contract for failure to indemnify, (3) bad faith and punitive damages, and (4) unfair and deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1 [D.E. 21].

On December 8, 2017, Universal moved for judgment on the pleadings [D.E. 32] and filed a memorandum in support [D.E. 33], Lallier and MGL, Inc. moved for partial judgment on the pleadings [D.E. 34] and filed a memorandum in support [D.E. 35], and Reed, Reed Lallier Chevrolet, and GRJ, Inc. moved for partial judgment on the pleadings [D.E. 36] and filed a memorandum in support [D.E. 37]. On December 29, 2017, each of the parties responded in opposition to the cross-

motions [D.E. 38, 39, 40]. On January 12, 2018, each of the parties replied [D.E. 41, 42, 43]. As explained below, plaintiff's motion for a judgment on the pleadings is granted in part and denied in part, and defendants' motions for a partial judgment on the pleadings is granted.

I.

Universal issued an insurance policy covering garage operations to defendants Lallier, Reed, and Reed Lallier Chevrolet (the "policy"). See Compl. [D.E. 1] 4; [D.E. 1-2]; [D.E. 1-3]. On January 27, 2017, Quinn, a former employee of Reed Lallier Chevrolet, filed a complaint against Reed Lallier Chevrolet, Michael Lallier, MGL, Inc., Gene Reed, Jr., and GRJ, Inc. alleging ten causes of action for (1) wrongful termination, (2) interference with free speech rights under the North Carolina Constitution, (3) abuse of process, (4) obstruction of justice, (5) unfair and deceptive trade practices in violation of N.C. Gen Stat. § 75.01, (6) negligent hiring and retention, (7) civil conspiracy, (8) vicarious liability, (9) punitive damages, and (10) declaratory judgment. See [D.E. 1-1]. Quinn contends that he was fired from his job at Reed Lallier Chevrolet for assisting law enforcement with the investigation of a heinous crime that Lallier committed against a minor. See id. at 2–5. Quinn also contends that defendant Reed knew about Lallier's prior sexual misconduct, and that Lallier and Reed used their business to pay off Lallier's victims. See id. at 8–10.

Universal agreed to defend the Quinn Action under a reservation of rights. See [D.E. 21] 23. In its reservation of rights letter, Universal stated that there would likely be no coverage for the claims in the Quinn Action because the claims would be excluded by either the "International Acts" exclusion, the "Public Policy" exclusion, or the "Dishonest Acts" exclusion. Id.

The policy provides that Universal "will pay those sums the INSURED legally must pay as DAMAGES because of INJURY to which this insurance applies . . . caused by an OCCURRENCE arising out of YOUR GARAGE OPERATIONS or AUTO HAZARD." [D.E. 1-3] 1. The policy divides the covered injuries into various groups. See id. at 6–7. Group 1 includes "bodily injury,

sickness, disease or disability (including death resulting from any of these)." Id. Group 3 includes, among other injuries, "malicious prosecution" and "abuse of process." Id. Group 6 includes "discrimination" and "wrongful employment practices." Id. at 7. "Wrongful employment practices" includes "wrongful termination" and "retaliation." Id. at 9. The policy defines "wrongful termination" as "the termination of any employment relationship in a manner which is against the law." Id. The policy defines "retaliation" as "adverse employment actions against employees for exercising or attempting to exercise their rights under law, where RETALIATION is insurable by law." Id. at 8. The policy defines "Occurrence" as

> 1. with respect to COVERED POLLUTION DAMAGES and INJURY Groups 1 and 2, an accident, including continuous or repeated exposure to conditions which result in such INJURY or COVERED POLLUTION DAMAGES neither intended nor expected from the standpoint of a reasonably prudent person;
>
> 2. with respect to INJURY Groups 3, 4, 5 and 6, acts or offenses of the INSURED which result in such INJURY;
>
> 3. with respect to INJURY Group 6, when INJURY arises out of a series of related and continuous acts or offenses, the last injurious act or offense committed in the last coverage part period insured by US.

Id. at 8.

The policy also includes a "dishonest acts" exclusionary provision and an "intent to cause harm" exclusionary provision. Id. at 11–12. The "dishonest acts" provision excludes from coverage

> an OCCURRENCE, SUIT or claim arising out of any dishonest, fraudulent or criminal acts committed by any INSURED.
>
> However, with respect to INJURY Group 6, this exclusion does not apply to YOU if such act was committed by YOUR employee (other than a partner, director, or executive officer) without YOUR direction or YOUR knowledge.

Id. at 11. The "intent to cause harm" provision excludes from coverage "any act committed by or at the direction of the INSURED with intent to cause harm. This exclusion does not apply if INJURY arises solely from the intentional use of reasonable force for the purpose of protecting persons or property." Id. at 12.

3

Universal moves for judgment on the pleadings and asks the court to declare that it has no duty to defend or indemnify the defendants against the claims in the Quinn Action. Universal argues that it has no duty to defend because: (1) the facts alleged in the Quinn Action do not constitute an occurrence under the policy; (2) the dishonest acts provision excludes all claims in the Quinn Action; and (3) the intent to cause harm provision also excludes several claims in the Quinn Action. See Compl. at 4–7; [D.E. 33] 9–16. Universal also argues that it is entitled to judgment on the pleadings concerning defendants' breach of contract, bad faith, and unfair claims settlement practices ("UDTPA") counterclaims. See [D.E. 33] 16–21.

Defendants Lallier and MGL, Inc. seek partial judgment on the pleadings and argue that Universal has a duty to defend them in the Quinn Action. See [D.E. 34, 35]. Similarly, defendants Reed Lallier Chevrolet, GRJ, Inc., and Gene Reed seek partial judgment on the pleadings and contend that Universal has a duty to defend them in the Quinn Action. See [D.E. 36, 37].

II.

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." A court ruling on a Rule 12(c) motion for judgment on the pleadings applies the same standard as when deciding a Rule 12(b)(6) motion to dismiss. See Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 674 F.3d 369, 375 (4th Cir. 2012). Thus, the court assumes the facts alleged in the complaint are true and draws all reasonable factual inferences in plaintiffs' favor. See Burbach Broad. Co. of Delaware v. Elkins Radio Corp., 278 F.3d 401, 406 (4th Cir. 2002). As when ruling on a Rule 12(b)(6) motion to dismiss, the court can consider documents relied on by the parties in their briefing if they are integral to and explicitly relied on in the complaint, and their authenticity is undisputed. See Occupy Columbia v. Haley, 738 F.3d 107, 117 n.7 (4th Cir. 2013).

The cross-motions for judgment on the pleadings require the court to consider the parties' state-law claims and defenses, and the parties agree that North Carolina law applies. Accordingly, this court must predict how the Supreme Court of North Carolina would rule on any disputed state-law issue. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005). In doing so, the court must look first to opinions of the Supreme Court of North Carolina. See Stahle v. CTS Corp., 817 F.3d 96, 100 (4th Cir. 2016). If there are no governing opinions from that court, this court may consider the opinions of North Carolina Court of Appeals, treatises, and "the practices of other states." Twin City Fire Ins. Co., 433 F.3d at 369 (quotation and citation omitted).[1] In doing so, this court "should not create or expand a [s]tate's public policy." Time Warner Entm't-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (alteration and quotation omitted); see Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999). Moreover, in predicting how the highest court of a state would address an issue that it has not yet resolved, this court must "follow the decision of an intermediate state appellate court unless there is persuasive data that the highest court would decide differently." Toloczko, 728 F.3d at 398 (quotation omitted).

A.

Under North Carolina law, interpreting a written contract is a question of law for the court. See Briggs v. Am. & Efird Mills, Inc., 251 N.C. 642, 644, 111 S.E.2d 841, 843 (1960); N.C. Farm Bureau Mut. Ins. Co. v. Mizell, 138 N.C. App. 530, 532, 530 S.E.2d 93, 95 (2000). When interpreting a written insurance policy

> [T]he goal of construction is to arrive at the intent of the parties when the policy was issued. Where a policy defines a term, that definition is to be used. If no definition is given, non-technical words are to be given their meaning in ordinary speech, unless the context clearly indicates another meaning was intended. The various terms of the

---

[1] North Carolina does not have a "mechanism . . . to certify questions of state law to its Supreme Court." Town of Nags Head v. Toloczko, 728 F.3d 391, 397–98 (4th Cir. 2013).

policy are to be harmoniously construed, and if possible, every word and every provision is to be given effect. . . .

Gaston Cty. Dyeing Mach. Co. v. Northfield Ins. Co., 351 N.C. 293, 299–30, 524 S.E.2d 558, 563 (2000) (quotation omitted); see Plum Props., LLC v. N.C. Farm Bureau Mut. Ins. Co., 802 S.E.2d 173, 175 (N.C. App. 2017); Mizell, 138 N.C. App. at 532, 530 S.E.2d at 95. A court may engage in judicial construction only where the language in the policy is ambiguous. See Mizell, 138 N.C. App. at 532, 530 S.E.2d at 95. Ambiguities should be construed against the insurer and in favor of the insured. See id. Similarly, coverage clauses are interpreted broadly and exclusionary coverages are construed narrowly. See Plum Props., 802 S.E.2d at 175–76. Language is not ambiguous, however, "simply because the parties contend for differing meanings to be given to the language." Mizell, 138 N.C. App. at 532, 530 S.E.2d at 95

In determining whether an insurer has a duty to defend, courts in North Carolina "apply the 'comparison test' which requires that the insured's policy and the complaint be read side-by-side to determine whether the events alleged are covered or excluded by the policy." Plum Props., 802 S.E.2d at 175; see Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C., 364 N.C. 1, 7, 692 S.E.2d 605, 611 (2010); Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co., 315 N.C. 688, 693, 340 S.E.2d 374, 377 (1986). An insurer has a duty to defend if the facts, as alleged, are covered by the terms of insurance policy. See Harleysville Mut. Ins., 364 N.C. at 7, 692 S.E.2d at 611; Plum Props., 802 S.E.2d at 175. "Any doubt as to coverage is to be resolved in favor of the insured." Waste Mgmt. of Carolinas, Inc., 315 N.C. at 693, 340 S.E.2d at 377; see Allstate Ins. Co. v. Lahoud, 167 N.C. App. 205, 208, 605 S.E.2d 180, 182 (2004). Furthermore, when a complaint alleges multiple claims, some of which are covered and some of which are not, "an insurer is obligated to defend its insured against all claims made in the lawsuit." State Auto Prop. & Cas. Ins. Co. v. Travelers Indem. Co., 343 F.3d 249, 255 (4th Cir. 2003); see Kubit v. MAG Mut. Ins. Co., 210 N.C. App. 273, 277–78, 708 S.E.2d 138, 144–45 (2011).

Universal argues that the "dishonest acts" provision bars all claims in the Quinn Action because the claims arise from Lallier's criminal acts. See [D.E. 33] 9–12. Universal also argues that the "intent to cause harm" provision bars the obstruction of justice, wrongful termination, abuse of process, civil conspiracy, and unfair and deceptive trade practices claims because these claims arose from intentional acts of the insured. See id. at 9–16.

Defendants respond that Universal had a duty to defend at least the abuse of process and wrongful termination claims. See [D.E.35] 4–7; [D.E. 37] 12–22. In support, defendants cite the policy's affirmative grant of coverage for abuse of process and wrongful termination. See [D.E. 37] 12, 18; [D.E. 1-3] 6–7.

1.

As for Universal's argument that the "dishonest acts" provision bars all claims in the Quinn Action, the dishonest acts provision provides that the policy does not apply to "an OCCURRENCE, SUIT or claim arising out of any dishonest, fraudulent or criminal acts committed by any INSURED." [D.E. 1-3] 11. Universal argues that, although the Quinn Action includes various claims (both intentional and negligent), all claims in the Quinn Action arose from Lallier's criminal acts.

The court rejects Universal's argument. The claims in the Quinn Action are one step removed from Lallier's criminal acts because Quinn's injuries were directly caused by Reed Lallier Chevrolet's decision to fire Quinn, not by Lallier's criminal acts. In reaching this conclusion, the court recognizes that courts frequently have held that claims "arise from" or "out of" acts included in an exclusionary provision when the alleged harm directly resulted from the acts described in the provision, regardless of how the claims are framed. See, e.g., West Am. Ins. Co. v. Embry, No. Civ.A. 3:04CV-47-H, 2005 WL 1026185, at *3–5 (W.D. Ky. Apr. 25, 2005) (unpublished); Allstate Ins. Co. v. Bates, 185 F. Supp. 2d 607, 612–13 (E.D.N.C. 2000); Builders Mut. Ins. Co. v. North Main Constr. Ltd., 361 N.C. 85, 89, 637 S.E.2d 528, 530–31 (2006); Continental Cas. Co. v. H.S.I. Fin. Servs., 266 Ga. 260, 262

466 S.E.2d 4, 6 (1996); cf. Gulf Underwrtiers Ins. Co. v. KSI Servs., Inc., 233 F. App'x 239, 240–41 (4th Cir. 2007) (unpublished). For example, in Great Divide Insurance Company v. Midnight Rodeo, Inc., Great Divide Insurance obtained a declaratory judgment that it had no duty to defend its insured, Midnight Rodeo, in an action alleging that a Midnight Rodeo bouncer used excessive force against a patron which resulted in the patron's death. See Great Divide Ins. Co. v. Midnight Rodeo, Inc., No. S:08–CV–204–F, 2010 WL 2077162, at *1 (E.D.N.C. May 24, 2010) (unpublished). The administratrix of the deceased patron's estate brought the action and sought damages from Midnight Rodeo for "negligence and wrongful death." See id. at *1, 4. The policy at issue included an "assault and battery" exclusionary provision that excluded from insurance coverage any claims for bodily injury arising out of any alleged assault or battery. See id. at *3. Midnight Rodeo argued that "allegations of negligence do not encompass the intent necessary to assert an assault or battery claim and furthermore, do not trigger the assault and battery exclusion provision in the Policy." Id. at *4 (alteration omitted). The court disagreed and held that although plaintiff framed the underlying claims in terms of negligence, an insurer has no duty to defend when "an assault or battery exclusion exists, and the plaintiff's claims of negligence would not arise but for the underlying assault and battery." Id. at *6.

Under North Carolina law, exclusionary provisions in insurance contracts are disfavored, and courts strictly construe ambiguous provisions against the insurer. See State Capital Ins. Co. v. Nationwide Mut. Ins. Co., 318 N.C. 534, 546–47, 350 S.E.2d 66, 73 (1986). Consistent with that principle, the Supreme Court of North Carolina, in interpreting an exclusionary provision under a homeowners policy, held that "the sources of liability which are excluded . . . must be the sole cause of the injury in order to exclude coverage under the policy." State Capital Ins. Co., 318 N.C. at 546, 350 S.E.2d at 73; see also Nationwide Mut. Fire Ins. Co. v. Nunn, 114 N.C. App. 604, 601, 442 S.E.2d 340, 343 (1994). In Great Divide, the bouncer's assault and battery was the sole cause of the

injuries alleged. By contrast, in this case, Lallier's alleged criminal acts were not the sole cause of Quinn's injuries. Rather, Quinn's termination caused his alleged injuries.[2] Accordingly, the "dishonest acts" provision does not relieve Universal of its duty to defend the claims in the Quinn Action.

2.

As for the "intent to cause harm" provision, Universal argues that the "intent to cause harm" provision bars the obstruction of justice, wrongful termination, abuse of process, civil conspiracy, and unfair and deceptive trade practices claims in the Quinn Action. In opposition, defendants argue that "the Policy provides affirmative coverage for abuse of process [and wrongful termination] and, if [Universal] is correct about the exclusion, it would make the coverage afforded illusory." [D.E. 39] 4–5. Defendants also argue that Quinn's abuse of process claim entitles him to coverage without any proof of an intent to cause harm. See id. 5.

Universal has a duty to defend the wrongful termination claim because the policy's affirmative grant of coverage for wrongful termination claims and the "intent to cause harm" provision creates an ambiguity that the court resolves in favor of the insured. See, e.g., Graham, 84 N.C. App. at 431,

---

[2] Universal cites J.W. v. Johnston Cty Bd. of Educ., No. 5:11–CV–707–D, 2012 WL 4425439, at *11 (E.D.N.C. Sept. 24, 2012) (unpublished), in support of its argument that it has no duty to defend the wrongful termination and negligent hiring/retention claims. See [D.E. 33] 10–15. Universal, however, misunderstands J.W. In J.W., the policy at issue provided an exclusion for claims "arising out of or in connection with, in whole or in part, ... dishonest, fraudulent, malicious, wanton, willful, intentional or criminal acts." J.W., 2012 WL 4425439, at *11. As for the claims concerning negligent hiring and retention, Universal states that "the Court found that the school board had no coverage for the wrongful termination, negligent hiring and negligent supervision claims as they, 'arose out of,' in whole or in part, a criminal act, despite the fact that no criminal act had been committed by the teacher bringing the claims against the school for wrongful termination." [D.E. 33] 11. Universal's statement is incorrect. In J.W., the court held that the Board did not have excess coverage for the negligent supervision claim because the policy explicitly excluded from coverage claims for "negligent hiring, negligent training, negligent reporting, negligent investigation, negligent retention and/or negligent supervision." J.W., 2012 WL 4425439, at *11; see also No. 5:11–CV–707–D, [D.E. 18-1] (E.D.N.C. Mar. 15, 2012) (copy of insurance policy).

9

352 S.E.2d at 881; Stanback v. Westchester Fire Ins. Co., 68 N.C. App. 107, 115, 314 S.E.2d 775, 779 (1984). The policy defines "wrongful termination" as "termination of any employment relationship in a manner which is against the law." [D.E. 1-3] 9. Under North Carolina law, a plaintiff may bring a wrongful termination claim "upon the theory of a violation of public policy." McQueen v. City of Hamlet, 208 N.C. App. 282, 702 S.E.2d 555, 2010 WL 5135546, at *4 (2010) (unpublished table decision). In order to allege a wrongful termination claim a plaintiff must allege "specific conduct by defendant that violated . . . [North Carolina's] public policy." Considine v. Compass Grp. USA, Inc., 145 N.C. App. 314, 321, 551 S.E.2d 179, 184, aff'd, 354 N.C. 568, 557 S.E.2d 528 (2001). In such a wrongful termination claim, "the termination itself must be motivated by an unlawful reason or purpose that is against public policy," which "contemplates a degree of intent or willfulness on the part of the employer." Garner v. Rentenbach Constructors, Inc., 350 N.C. 567, 572, 515 S.E.2d 438, 441 (1999); Coman v. Thomas Mfg. Co., 325 N.C. 172, 176–78, 381 S.E.2d 445, 447–48 (1989); Lenzy v. Flaherty, 106 N.C. App. 496, 500, 514–15, 418 S.E.2d 276, 279, 287 (1992). "The narrow exceptions to [the employment-at-will doctrine] have been grounded in considerations of public policy designed either to prohibit status-based discrimination or to insure the integrity of the judicial process or the enforcement of the law." Kurtzman v. Applied Analytical Indus., Inc., 347 N.C. 329, 333–34, 493 S.E.2d 420, 423 (1997). In light of the facts alleged and the policy's ambiguity concerning wrongful termination claims and the intent to cause harm exclusion, Universal has a duty to defend the wrongful termination claim. See, e.g., Mizell, 138 N.C. App. at 532, 530 S.E.2d at 95.

As for the abuse of process claim, the elements of an abuse of process claim are: "(1) a prior proceeding [] initiated by defendant to achieve an ulterior motive or purpose; and (2) once that proceeding was initiated, some willful act not proper in the regular prosecution of the proceeding was committed." Franklin v. Yancey Cty., No. 1:09cv199, 2010 WL 317804, at *5 (W.D.N.C. Jan. 19,

2010) (unpublished) (emphasis added); see Semones v. S. Bell Tel. & Tel. Co., 106 N.C. App. 334, 341, 416 S.E.2d 909, 913 (1992).

> The ulterior motive requirement is satisfied when the plaintiff alleges that the prior action was initiated by the defendant or used by him to achieve a purpose not within the intended scope of the process used. The act requirement is satisfied when the plaintiff alleges that during the course of the prior proceeding, the defendant committed some wilful act whereby he sought to use the proceeding as a vehicle to gain advantage of the plaintiff in respect to some collateral matter.

Hewes v. Wolfe, 74 N.C. App. 610, 614, 330 S.E.2d 16, 19 (1985) (citation omitted); see Stanback v. Stanback, 297 N.C. 181, 200, 254 S.E.2d 611, 624 (1979) disapproved of on other grounds by Dickens v. Puryear, 302 N.C. 437, 446, 276 S.E.2d 325, 331 (1981).

The court questions whether abuse of process can be committed without an intent to cause harm. See, e.g., Beroth Oil Co. v. Whiteheart, 173 N.C. App. 89, 100, 618 S.E.2d 739, 747 (2005). Nonetheless, the court need not decide the issue at this time. Because Universal had a duty to defend the wrongful termination claim, it has a duty to defend all claims in the Quinn Action. See, e.g., State Auto Prop. & Cas. Ins. Co., 343 F.3d at 255. Accordingly, the court grants defendants' motion for a partial judgment on the pleadings concerning Universal's duty to defend.

3.

As for Universal's argument concerning public policy, courts may refuse to enforce a contract where the enforcement would violate public policy. See, e.g., St. Paul Mercury Ins. Co. v. Duke Univ., 849 F.2d 133, 135 (4th Cir. 1988).

> The power to refuse to enforce contracts on the ground of public policy is ... limited to occasions where the contract would violate some explicit public policy that is well defined and dominant, and which is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests.

Id. (quotation and alteration omitted).

In Shew v. Southern Fire & Casualty Co., 307 N.C. 438, 298 S.E.2d 380 (1983), the Supreme Court of North Carolina held that it violated public policy for an insurer to pay an award of restitution

that was imposed as part of a criminal judgment. See id. at 444, 298 S.E.2d at 384. In so holding, the Supreme Court of North Carolina stated:

> As an insurer has no legal obligation to defend a criminal proceeding brought against an insured arising out of the operation of an automobile causing injury or damages, so no obligation arises from the disposition of the criminal proceeding. Moreover, it is a basic proposition of public policy, requiring no citation of supporting authority, that an insured is not allowed to profit from his own wrongdoing. To require the [insurer] to reimburse plaintiffs for the amount ordered as restitution or to hold that the [insurer] was legally obligated to pay . . . would be tantamount to condoning insurance against the results and penalties of one's own criminal acts.

Id., 298 S.E.2d at 384 (citation omitted). Although Universal suggests that providing insurance coverage in this case is tantamount to "condoning insurance against the results" of Lallier's criminal acts, this court disagrees. Tellingly, in Shew, the Supreme Court of North Carolina emphasized the differences between criminal and civil judgments. See Shew, 307 N.C. at 441–44, 298 S.E.2d at 382–84; cf. Nationwide Mut. Ins. Co. v. Roberts, 261 N.C. 285, 291–93, 134 S.E.2d 654, 660 (1964); Graham v. James F. Jackson Assocs., Inc., 84 N.C. App. 427, 431–32, 352 S.E.2d 878, 881–82 (1987). Here, although Lallier allegedly committed heinous criminal acts, the Quinn Action involves civil claims that arose after Lallier's criminal conduct. Notably, in Mazza v. Medical Mutual Insurance Co., 311 N.C. 621, 319 S.E.2d 217 (1984), the Supreme Court of North Carolina held that it is not against public policy to enforce an insurance policy that provides coverage for punitive damages arising from wanton or grossly negligent conduct. Id. at 626, 319 S.E.2d at 220; see also St. Paul Mercury Ins. 849 F.2d at 135–37 (holding that North Carolina public policy would allow indemnification for punitive damages arising from the intentional conduct of the insured). Accordingly, the court rejects Universal's public policy argument.

4.

To the extent Universal contends that all claims in the Quinn Action are not an occurrence under the policy, the court rejects the argument. The abuse of process and wrongful termination claims are occurrences under the policy. Under the policy, "occurrence" means "with respect to

INJURY Groups 3, 4, 5, and 6, acts or offenses of the INSURED which result in such INJURY[.]" [D.E. 1-3] 8. The policy lists both abuse of process and wrongful termination as injuries. See id. at 6–7, 9. Thus, both abuse of process and wrongful termination are occurrences if they resulted from acts or offenses of the insured. Quinn's abuse of process and wrongful termination claims resulted from defendants' decision to fire him. Accordingly, the abuse of process and wrongful termination claims are "occurrences" under the policy.

5.

To the extent Universal seeks a judgment on the pleadings that it had no duty to indemnify, this motion is denied. An insurer's duty to indemnify cannot be determined solely by the pleadings if material facts are in dispute. See Waste Mgmt., 315 N.C. at 691, 340 S.E.2d at 377; Fed. Ins. Co. v. S. Lithoplate, Inc., 7 F. Supp. 3d 579, 589 (E.D.N.C. 2014); Montgomery Mut. Ins. Co. v. Citadel Mgmt., LLC, No. 3:12–CV–00797–FDW, 2013 WL 6147778, at *6 (W.D.N.C. Nov. 22, 2013) (unpublished). In determining an insurer's duty to indemnify, a court typically compares the facts as determined at trial to the insurance policy's language. See Harleysville Mut. Ins. Co. v. Hartford Cas. Ins. Co., 90 F. Supp. 3d 526, 539–40 (E.D.N.C. 2015). Where litigation settles before trial, "[a] judicial assessment of post-settlement coverage disputes generally turns on the types of the underlying claims that have been settled." ABT Bldg. Prods. Corp. v. Nat'l Union Fire Ins. Co., 472 F.3d 99, 120 n.29 (4th Cir. 2016); see Hartford Cas. Ins. Co., 90 F. Supp. 3d at 539–40.

Here, material facts are in dispute. Accordingly, the court cannot resolve issues concerning indemnification at this time.

III.

Universal seeks judgment on the pleadings concerning defendants' bad faith counterclaim. To state claim for bad faith in the insurance context, a plaintiff must allege: "1) a refusal to pay after recognition of a valid claim; 2) bad faith; and 3) aggravating or outrageous conduct." Blis Day Spa,

LLC v. Hartford Ins. Grp., 427 F. Supp. 2d 621, 631 (W.D.N.C. 2006) (quotation omitted). "Bad faith means not based on a legitimate, honest disagreement as to the validity of the claim." Id. (quotation omitted). "Aggravated conduct [is] defined to include fraud, malice, gross negligence, insult, willfully, or under circumstances of rudeness or oppression, or in a manner which evinces a reckless and wanton disregard of the plaintiff's rights." Id. (quotation and ellipsis omitted); see Topsail Reef Homeowners Ass'n v. Zurich Specialties London, Ltd., 11 F. App'x 225, 237–39 (4th Cir. 2001) (per curiam) (unpublished); LRP Hotels of Carolina, LLC v. Westfield Ins. Co., No. 4:13–CV–94–D, 2014 WL 5581049, at *4 (E.D.N.C. Oct. 31, 2014) (unpublished); Schaffner v. USAA Cas. Ins. Co., 172 N.C. App. 592, 616 S.E.2d 692, 2005 WL 1949877, at *4 (2005) (unpublished). When an insurer denies a claim that is reasonably in dispute and based on a legitimate disagreement, the plaintiff cannot establish bad faith or aggravating conduct. See Topsail Reef Homeowners Ass'n, 11 F. App'x at 239; Blis Day Spa, 427 F. Supp. 2d at 632.

Defendants allege that Universal acted in bad faith by: (1) failing to act fairly and in good faith, (2) wrongfully refusing to fulfill its coverage obligations, (3) misrepresenting provisions of the policy by failing to inform defendants that the policy provided coverage for abuse of process and wrongful employment practices and failing to inform defendants about the separation of insureds provision, (4) wrongfully denying coverage, (5) wrongfully refusing to indemnify the defendants, and (6) forcing the defendants to pay the Quinn settlement from their own funds. See [D.E. 21] 27–28.

Even viewing the claim in the light most favorable to the defendants, defendants fail to plausibly allege the requisite elements of a bad faith claim under North Carolina law. Specifically, defendants have failed to plausibly allege that Universal refused to pay the settlement after recognizing a valid claim. See, e.g., Huang v. State Farm Fire & Cas. Co., No. 5:14–CV–00069–RN, 2015 WL 1433553, at *3–4 (E.D.N.C. Mar. 27, 2015) (unpublished) ("None of the facts alleged in the Complaint render it plausible to infer that [the insurer] recognized the [plaintiff's] claim as valid

14

but refused to pay them."); Barnett v. State Farm Auto Prop & Cas. Ins., No. 2:14cv34, 2015 WL 276512, at *3 (W.D.N.C. Jan. 22, 2015) (unpublished); Lenoir Mall, LLC v. State Farm Fire & Cas. Co., No. 5:10–cv–40, 2011 WL 3682794, at *2 (W.D.N.C. Aug. 23, 2011) (unpublished); Blis Day Spa, 427 F. Supp. 2d at 632. Accordingly, the court grants Universal's judgment on the pleadings concerning defendants' bad faith counterclaim.

IV.

As for Universal's motion for judgment on the pleadings concerning defendants' UDTPA counterclaim, defendants' UDTPA claim cites numerous unfair claims settlement practices identified in N.C. Gen. Stat. § 58-63-15(11) as the basis for the alleged UDTPA violation. See [D.E. 21] 29. Specifically, defendants contend that Universal violated N.C. Gen. Stat. § 58-63-15(11) by:

> a. Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;
>
> d. Refusing to pay claims without conducting a reasonable investigation based upon all available information; . . .
>
> f. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;
>
> g. Compelling [the] insured to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insured;

N.C. Gen. Stat. § 58-63-15(11); see [D.E. 21] 29.

Although N.C. Gen. Stat. § 58-63-15(11) does not include a private cause of action, a plaintiff may obtain relief for violations of N.C. Gen. Stat. § 58-63-15(11) under N.C. Gen. Stat. § 75-1.1. See, e.g., Elliott v. Am. States Ins. Co., 883 F.3d 384, 396 (4th Cir. 2018) ("[T]he remedy for a violation of section 58-63-15 is the filing of a section 75-1.1 claim." (quotation omitted); Burch v. Lititz Mut. Ins. Co., No. 7:12–CV–107–FL, 2013 WL 6080191, at *8–9 (E.D.N.C. Nov. 19, 2013) (unpublished). In order to establish a prima facie case under the UDTPA, a plaintiff must show: "(1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused

injury to plaintiffs." Gray v. N.C. Ins. Underwriting Ass'n, 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000); see Kelly v. Georgia-Pacific LLC, 671 F. Supp. 2d 785, 798–99 (E.D.N.C. 2009) (collecting cases); N.C. Gen. Stat. § 75-1.1. "[W]hether an act or practice is an unfair or deceptive practice . . . is a question of law for the court." Gray, 352 N.C. at 68, 529 S.E.2d at 681. Conduct that violates N.C. Gen. Stat. § 58-63-15(11) is an unfair and deceptive act or practice under the UDTPA because "such conduct is inherently unfair, unscrupulous, immoral, and injurious to consumers." Id. at 71, 529 S.E.2d at 683; Country Club of Johnston Cty., Inc. v. U.S. Fid. & Guar. Co., 150 N.C. App. 231, 246, 563 S.E.2d 269, 279 (2002). Moreover, although N.C. Gen. Stat. § 58-63-15(11) requires a showing of a "frequency indicating a 'general business practice,'" a claim brought under the UDTPA does not require a frequency showing. Gray, 352 N.C. at 71, 529 S.E.2d at 683; see Westchester Fire Ins. Co. v. Johnson, 221 F. Supp. 2d 637, 643–44 (M.D.N.C. 2002). Thus, N.C. Gen. Stat. § 58-63-15(11) provides "examples of conduct [supporting] a finding of unfair or deceptive acts or practices." Johnson, 221 F. Supp. 2d at 644 (quotation omitted).

As for subsection (a), defendants contend that Universal misrepresented pertinent insurance policy provisions by failing to identify the grant of coverage for wrongful employment practices and abuse of process and failing to identify the separation of insureds provision in the policy. See [D.E. 21] 28. Defendants' claim fails, however, because they did not plausibly allege that they suffered damages as a result of the omission. See, e.g., Burrell v. Sparkkles Reconstruction Co., 189 N.C. App. 104, 111–13, 657 S.E.2d 712, 717–18 (holding that damages are a required element of a UDTPA claim).[3] Indeed, defendants admit that they were aware of the grant of coverage for wrongful employment practices. See [D.E. 21] 20. Thus, defendants have not plausibly alleged any damages

---

[3] It is unclear under North Carolina law whether "conduct that violates § 58-63-15(11) is a per se violation of § 75-1.1, or instead whether that conduct satisfies § 75-1.1's conduct requirement of an unfair or deceptive act or practice, still requiring the complainant to show that the act or practice was in or affecting commerce and proximately caused injury to the plaintiff before finding a violation of § 75-1.1." Elliott, 883 F.3d at 396 n.7.

resulting from any misstatement or omission.

As for subsection (d), defendants fail to plausibly allege that Universal refused to pay claims without conducting a reasonable investigation. Instead, defendants complaint demonstrates that Universal did conduct a reasonable investigation by sending a lawyer to the January 27, 2017 mediation, and by defending the Quinn Action under a reservation of rights after the case failed to settle at mediation. See [D.E. 25] 21, 23. Moreover, defendants' citation of N.C. Gen. Stat. § 58-63-15(11)(d) in their counterclaim is insufficient to survive a motion to dismiss. See, e.g., Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009); Mason v. Universal Underwriters Life Ins. Co., No. 1:06CV190, 2006 WL 2847288, at *7 (W.D.N.C. Oct. 4, 2006) (unpublished).

As for subsections (f) and (g), defendants are upset that Universal refused to indemnify them for the full amount of the Quinn settlement. See [D.E. 25] 18, 24. Defendants have failed to plausibly allege, however, that Universal's liability is "reasonably clear." See, e.g., Elliott, 883 F.3d at 398; Clear Creek Landing Home Owners' Ass'n, Inc. v. Travelers Indem. Co., No. 1:12cv157, 2012 WL 6641901, at *4 (W.D.N.C. Dec. 20, 2012) (unpublished) ("[T]he fact that Plaintiff may disagree with the assessment of Defendant . . . does not transform a run of the mill insurance dispute into a tort cognizable under Section 75–1.1."). Moreover, defendants have failed to plausibly allege that Universal compelled defendants to litigate to recover amounts due. See, e.g., Elliott, 883 F.3d at 398. At best, defendants allegations amount to a breach of contract claim. See, e.g., id.; Davis v. Sate Farm Life Ins. Co., 163 F. Supp. 3d 299, 307–08 (E.D.N.C. 2016). Accordingly, the court grants Universal's judgment on the pleadings concerning defendants' UDTPA counterclaim.

V.

As for Universal's motion for a judgment on the pleadings concerning defendants' breach of contract counterclaim, Universal argues that it did not breach its duty to indemnify because it voluntarily paid a portion of the settlement and that defendants knew they were being defended under

a reservation of rights. See [D.E. 33] 17–18.

In determining an insurer's duty to indemnify, a court typically compares the facts as determined at trial to the insurance policy's language. See Hartford Cas. Ins. Co., 90 F. Supp. 3d at 539–40; Buzz Off, 364 N.C. at 7, 692 S.E.2d at 11. Where the litigation settles before trial, "[a] judicial assessment of post-settlement coverage disputes generally turns on the types of the underlying claims that have been settled." ABT Bldg. Prods. Corp., 472 F.3d at 120 n.29; see Hartford Cas. Ins. Co., 90 F. Supp. 3d at 539–40.

The court cannot determine solely from the face of the pleadings which claims have been settled, the value of the settled claims, or whether Universal indemnified the defendants for claims covered by the policy. Accordingly, the court denies Universal's motion for judgment on the pleadings for defendants' breach of contract counterclaim.

VI.

In sum, the court GRANTS in part and DENIES in part Universal's motion for a judgment on the pleadings [D.E. 32], and GRANTS defendants' partial motion for a judgment on the pleadings [D.E. 34, 36]. The parties shall engage in a court-hosted mediation with United States Magistrate Judge James E. Gates.

SO ORDERED. This 16 day of August 2018.

JAMES C. DEVER III
Chief United States District Judge